RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ALLEN QUIGLEY, Administrator of the Estate
of Scott Allen Quigley, Jr., Deceased,

           *Plaintiff-Appellee*,

      *v.*

TUONG VINH THAI,

           *Defendant-Appellant*,

CORRECTIONAL MEDICAL SERVICES, INC.;
STEVEN GARVER,

           *Defendants*.

No. 11-2014

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-14221—Gerald E. Rosen, Chief District Judge.

Argued: July 26, 2012

Decided and Filed: February 21, 2013

Before: COOK and STRANCH, Circuit Judges; STAMP, District Judge.[*]

_____

## COUNSEL

**ARGUED:** John G. Fedynsky, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Heather A. Glazer, FIEGER, FIEGER, KENNEY, GIROUX & DANZIG, P.C., Southfield, Michigan, for Appellee. **ON BRIEF:** John G. Fedynsky, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Heather A. Glazer, FIEGER, FIEGER, KENNEY, GIROUX & DANZIG, P.C., Southfield, Michigan, for Appellee.

---

[*]The Honorable Frederick P. Stamp, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

—————————————

**OPINION**

—————————————

JANE B. STRANCH, Circuit Judge.   This appeal addresses whether defendant Dr. Tuong V. Thai, a prison psychiatrist, is entitled to immunity from state and federal civil claims brought by the estate of the now-deceased Scott Quigley, Jr., who Thai treated for moderate depression. The estate alleges that Thai's medical care caused Quigley's death, violated Quigley's Eighth Amendment right to be free from cruel and unusual punishment, and constituted gross negligence under state law.  Thai moved for summary judgment, asserting the defense of qualified immunity to the estate's federal claim and state-law immunity to the estate's gross-negligence claim.  The district court denied Thai summary judgment on both claims.  For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Quigley was a 23-year-old man with no known life-threatening physical ailments or conditions.[1]   In February 2008, Quigley was transferred from one Michigan Department of Corrections (MDOC) facility to an MDOC guidance center.  For the next month until his death, Quigley was under the medical supervision and care of Correctional Medical Services, Inc. (CMS), a service provider with which MDOC contracted.  Thai and physician's assistant Steven Garver treated Quigley for moderate depression at the guidance center.

The medical-intake assessment completed on the day Quigley arrived at the guidance center indicates that Quigley was taking 25 mg of Amitriptyline (brand name, Elavil) once a day for depression.   The next day, Garver completed a physical examination of Quigley and prescribed three months of 50 mg Amitriptyline once a day.

---

[1]Thai protests that Quigley was not healthy because he had a history of seizures, which can result in death.  But Quigley had not had a seizure in roughly 10 years despite not taking seizure medication regularly during those 10 years.  Moreover, Quigley described himself as being "in good physical condition" during an assessment on February 18, 2008.  Viewing the facts in the light most favorable to the estate as we must, concluding that Quigley was a healthy individual with no currently manifesting life-threatening conditions is a reasonable inference from the record.

A few weeks later, on March 7, 2008, Thai conducted a "Comprehensive Psychiatric Assessment" of Quigley. Thai's notes indicate that he discussed Quigley's taking Amitriptyline for depression and that Quigley expressed an interest in trying Trazodone for his moderate depression. Thai prescribed 100 mg of Trazodone (brand name, Desyrel) to be taken once a day for four weeks, and he discussed the side effects of Trazodone with Quigley.

On March 10, 2008, Quigley was found dead in his cell. The prison's medication chart confirms that Quigley had been administered both Amitriptyline and Trazodone the previous three days.

No documents in the record definitively ascertain Quigley's cause of death. The autopsy report concluded that Quigley died of an epileptic seizure disorder. Quigley's estate provides two affidavits from forensic pathologist Werner Spitz, who concluded that Quigley likely died not from an epileptic seizure, but rather from a fatal drug interaction between the tricyclic Amitriptyline and tetracyclic Trazodone. Spitz opined that taking a tricyclic and tetracyclic at the same time is "fraught with risks including [the] risk of coma and death" because the drugs together can cause serotonin syndrome. The estate also provided an affidavit from psychiatrist Dr. Gerald A. Shiener, who similarly opined that the tricyclic Amitriptyline and tetracyclic Trazodone when used together are dangerous because they exponentially increase the potency of one another and can be fatal. Shiener, like Spitz, concluded that the fatal drug interaction likely killed Quigley. On the other hand, Thai has provided three medical-expert affidavits, all of which criticize the conclusions of the estate's medical experts and conclude that the best explanation for Quigley's death is epileptic seizure.

In October 2009, the administrator of Quigley's estate sued Thai, Garver, and CMS, asserting in relevant part claims under 42 U.S.C. § 1983 for violating Quigley's Eighth Amendment right to be free from cruel and unusual punishment, as well as state-law claims for gross negligence. In April 2010 while discovery was ongoing, Thai moved for summary judgment on qualified-immunity grounds. Later that same month, Quigley's estate provided the first affidavit from Spitz and the affidavit from Shiener.

The district court denied Thai's first motion for summary judgment, reasoning that the facts taken in the light most favorable to the estate would allow a reasonable factfinder to conclude (1) that Thai violated Quigley's Eighth Amendment right to be free from cruel and unusual punishment and (2) that this right was clearly established. The court determined that there were disputes of material fact as to whether Thai knew that prescribing Trazodone when Quigley was already taking Amitriptyline created a substantial risk of serious harm. And the court determined that whether Thai's course of treatment caused Quigley's death was a "factual issue warranting further discovery."

During the additional discovery, Thai produced his three medical-expert affidavits, which disputed the conclusions of the estate's medical-expert affidavits and concluded that the most likely cause of Quigley's death was epileptic seizure. Thai then moved for summary judgment again in December 2010. He argued that the additional discovery—and in particular, his medical-expert affidavits—showed that he was undisputedly not liable for Quigley's death. The district court denied this motion as well, reasoning that the estate "has presented sufficient proof to create genuine issues of material fact as to whether [Thai's] course of treatment entitles him to a qualified immunity defense." All that had changed between the first and second motions for summary judgment was that Thai had now presented the court with a "battle of the experts." But the court concluded that viewing the evidence in the light most favorable to the estate would still allow a reasonable factfinder to conclude that Thai violated a clearly established constitutional right of Quigley's.

Thai appealed this denial.

## II. ANALYSIS

### A.     Standard of review

This court reviews a district court's denial of summary judgment based on qualified-immunity grounds de novo. *Bishop v Hackel*, 636 F.3d 757, 765 (6th Cir. 2011). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## B.        Jurisdiction over Thai's qualified-immunity claim

28 U.S.C. § 1291 grants us "jurisdiction of appeals from all *final decisions* of the district courts." (Emphasis added). A district court's denial of qualified immunity is an appealable final decision under § 1291 only "to the extent that it turns on an issue of law." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)) (internal quotation marks omitted). A defendant raising a qualified-immunity defense may not appeal a district court's summary-judgment order insofar as that order determines whether the pretrial record sets forth a genuine dispute of material fact for trial. *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). Instead, a defendant denied qualified immunity may appeal only if the issue on appeal is whether the plaintiff's facts, taken at their best, show that the defendant violated clearly established law. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (citing *Johnson*, 515 U.S. at 311).

Because we do not have jurisdiction over factual issues, "a defendant must concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Estate of Carter*, 408 F.3d at 309-10 (internal quotation marks omitted). But as the estate argues, Thai's appellate briefs waste many of their words disputing the estate's version of the facts, arguing, for example, that the estate's theory of a fatal drug interaction "lacks objective factual support" and that the estate's affidavits are "fundamentally flawed[,] unreliable," and should not have been considered by the district court. *See id.* (reasoning that the defendant disputed the plaintiff's version of the facts by arguing, among other things, "that the district court 'erroneously considered inadmissible evidence'").

The estate therefore argues that we do not have jurisdiction to consider Thai's fact-based appeal. In what may seem like additional support for the estate's argument, the district court in the present case denied Thai's summary-judgment motion because genuine disputes of material fact exist, and we lack jurisdiction to review those conclusions. But Thai's improper arguments and the basis of the district court's decision do not necessarily prevent us from having jurisdiction over Thai's appeal: "*regardless of the district court's reasons* for denying qualified immunity, we may exercise jurisdiction over the [defendant's] appeal to the extent it raises questions of law." *Williams*, 186 F.3d at 689-90 (ellipses and internal quotation marks omitted). So even where, as here, the defendant makes "impermissible arguments regarding disputes of fact," if the defendant also raises the purely legal issue of whether the plaintiff's facts show that the defendant violated clearly established law, "then there is an issue over which this court has jurisdiction." *Estate of Carter*, 408 F.3d at 310. Because Thai advances this proper, purely legal argument, we have jurisdiction to resolve the legal issue and need not dismiss the entire appeal. *Id.*

## C.     Merits of Thai's qualified-immunity claim

The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights. *Bishop*, 636 F.3d at 765. "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established."[2] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). We may choose to analyze either prong first. *Pearson*, 555 U.S. at 236. Once a defendant invokes qualified

---

[2]"Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here." *Estate of Carter*, 408 F.3d at 310 n.2. Both approaches are consistent with Supreme Court precedent. *Id.* "The third step is whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* (internal quotation marks omitted). Although the "three-step approach may in some cases increase the clarity of the proper analysis," it is not necessary in the present case because in this "factual context[], . . . the fact that a right is clearly established sufficiently implies that its violation is objectively unreasonable." *Id.* (internal quotation marks omitted).

immunity, the plaintiff bears the burden to show that qualified immunity is inappropriate. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

### 1.      Whether Thai violated a constitutional right

"[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An Eighth Amendment claim has an objective and subjective component. *Comstock*, 273 F.3d at 702. Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component "ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). We address each component in turn.

The estate satisfies the objective component. To do so, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 703-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As the Supreme Court explained, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Viewing the evidence in the present case in the light most favorable to the estate, the objective component of an Eighth Amendment claim is satisfied. The medical evidence the estate produced concludes that Quigley likely died as a result of the treatment he received for his depression.[3] As the district court concluded, treatment that kills an otherwise healthy 23-year-old male constitutes a "substantial risk of harm warranting constitutional protection."

The estate also satisfies the subjective component. To do so, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing

---

[3]Thai disputes that a fatal drug interaction between the tetracyclic drug (Trazodone) and tricyclic drug (Amitriptyline) caused Quigley's death. He adduces his own expert opinions both to support his theory that Quigley died of a seizure and to call into question the estate's medical evidence. This is a factual dispute that we are without jurisdiction to review.

*Farmer*, 511 U.S. at 837). This component prevents medical-malpractice claims from being transformed into constitutional claims. *Id.* So a "plaintiff alleging deliberate indifference must show more than negligence." *Id.* But a "plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835). "[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. One way a prison official can act with deliberate indifference is by "consciously exposing the patient to an excessive risk of serious harm" while providing medical treatment. *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001). The official's subjective knowledge of the substantial risk can be proven "in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. For example, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

The district court properly concluded that the estate satisfied the subjective component because the factual evidence, when viewed in the light most favorable to the estate, would allow a reasonable factfinder to infer that Thai was aware of a substantial risk of serious harm to Quigley and that he disregarded that risk. Thai was undisputedly aware that Quigley was taking Amitriptyline when he met with Quigley and prescribed Trazodone. His medical notes show that he discussed Quigley's Amitriptyline use at the same meeting that he prescribed Trazodone and explained its side effects. These notes do not suggest that Quigley should stop taking Amitriptyline while taking Trazodone, nor does the record indicate that Thai informed the prison not to dispense both drugs. Affidavits from the estate's medical experts state that it is well known in the psychiatric profession that a tetracyclic like Trazodone should not be administered in conjunction with a tricyclic like Amitriptyline because the drugs exponentially increase the potency of one another, "lead to toxic levels and are deadly." One affidavit stated that though the drugs should not be administered together, it is also well known that "if they are, the patient should be closely monitored for toxicity and adverse effects."[4] It is undisputed

_____

[4] Thai once again vigorously disputes these facts, drawing on affidavits from his own medical experts. But this battle of the experts is a factual dispute we are without jurisdiction to review.

that Thai did not take or order these precautions while Quigley was taking both drugs. Assuming that the facts set forth in the estate's expert affidavits are true, a reasonable factfinder could infer that Thai was aware of this risk but disregarded it both in prescribing Trazodone and in failing to take the necessary precautions once he prescribed the drug.

Thai's reviewable counterarguments notwithstanding, a reasonable factfinder could conclude on this record that both the objective and subjective components of an Eighth Amendment claim are satisfied. Thai argues that the very existence of his experts' opinions, which disagree with the estate's experts regarding the recognized dangerousness of Thai's treatment, "demonstrate[s] that there is no such common knowledge or consensus in the psychiatric . . . community." But, as the district court observed, this argument is logically unsound. Just because certain experts disagree about whether the treatment was widely known to be dangerous does not indisputably establish that there is no consensus or "that experts in the field are not in fact expected to know of these potential dangers." A principle can be widely known without everyone knowing it. And a reasonable juror could infer that Thai knew based on the fact that most professionals would know, even if all did not.

Thai also asserts that the complained-of conduct—which he phrases as "the context of actual care that [Thai] gave in the form of a drug prescription"—does not state a claim under the Eighth Amendment because it is not an allegation that "Thai refused to give Quigley medical treatment despite a known serious medical need." But the premise of this argument—that denying or delaying medical treatment is the only valid basis for an Eighth Amendment claim—is false. The Supreme Court explained that the general principle of liability for deliberate indifference covers situations where "the indifference is manifested by prison doctors in their response to the prisoner's needs." *Estelle*, 429 U.S. at 104. That broad language encompasses situations where a doctor "consciously expos[es] a patient to an excessive risk of serious harm" while providing medical treatment. *LeMarbe*, 266 F.3d at 439. *Estelle* even cited such a situation as an example of deliberate indifference: a prison nurse injected the prisoner with penicillin

even though the prisoner had informed the medical staff that he was allergic to penicillin and the prison doctor refused to treat the resulting allergic reaction. 429 U.S. at 104 n.10 (citing *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.), *vacated and remanded on other grounds sub nom*, *Cannon v. Thomas*, 419 U.S. 813 (1974)).[5] Crediting Thai's theory on the bounds of an Eighth Amendment claim would elevate the form of the allegation over the substance of the protected right. Such a narrow view of a deliberate-indifference claim is contrary to precedent and policy.

Thai relies on four unpublished cases to argue that "prisoner cases challenging injuries allegedly connected to drug prescriptions" involve only negligence, which is insufficient to support an Eighth Amendment violation. But these cases, which were disposed of through summary judgment or a motion to dismiss, are distinguishable because the prisoner either did not provide any evidence or allege that the defendants acted with a sufficiently culpable state of mind akin to recklessness; rather, their evidence or allegations at best established only garden-variety negligence. *Reyes v. Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004) ("Reyes has offered no evidence, however, . . . that defendants were not merely negligent, but aware that their prescribed treatment plan was medically inadequate."); *Chaparro v. Easton*, 48 F.3d 1221 (table), 1995 WL 94860, at *1 (7th Cir. 1995) ("There is no indication in Chaparro's complaint that Dr. Easton knew (or even suspected) that the injection of Kenolog would cause the harmful side effects of which Chaparro now complains."); *Gipson v. LaPlante*, No. 3:09-cv-1188 (RNC), 2010 WL 670228, at *1-2 (D. Conn. Feb. 19, 2010) ("[T]here is no indication that Dr. LaPlante acted with a more culpable state of mind akin to criminal recklessness."); *Love v. Growse*, No. 5:08-303-KSF, 2008 WL 4534091, at *2 (E.D. Ky. Oct. 3, 2008) ("Love characterizes the failure of his [doctors] . . . 'as negligence.' . . . Absent an express allegation of intentional wrongdoing or allegations which provide a factual basis for inferring the kind of gross recklessness necessary to satisfy the Eight Amendment's requirement of *deliberate* indifference, this claim fails as a matter of law.").

---

[5] The Seventh Circuit held that "Thomas' allegations concerning the administration of penicillin despite his known allergy to that drug . . . suffice to state claims for relief" under an even higher standard: "intentional mistreatment likely to aggravate his condition." *Thomas*, 493 F.2d at 158.

Because the estate has put forth evidence from which a reasonable factfinder could conclude that Thai violated Quigley's Eighth Amendment right to be free from cruel and unusual punishment, we must proceed to the second prong of the qualified-immunity analysis: whether that right was clearly established.

## 2.          Whether the right was clearly established

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation marks omitted). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. So the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202. "[W]e need not find a case in which 'the very action in question has previously been held unlawful,' but, 'in the light of pre-existing law, the unlawfulness must be apparent.'" *Comstock*, 273 F.3d at 711 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (brackets omitted). To evaluate the contours of the right, "we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006) (internal quotation marks omitted). But we need not find a decision on all fours. "[O]utrageous conduct will obviously be unconstitutional" without regard to precedent because "the easiest cases don't even arise." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009) (brackets and internal quotation marks omitted). And even in cases involving less than outrageous conduct, "officials can still be on notice that their conduct violates established law in novel factual circumstances." *Id.* at 377-78 (ellipses and internal quotation marks omitted).

It is clearly established that a prisoner has a right not to have his known, serious medical needs disregarded by his doctors; a prisoner has a right not to have his doctors be deliberately indifferent to his serious medical needs. *Estelle*, 429 U.S. at 104;

*Farmer*, 511 U.S. at 837. This right applies to situations where "the indifference is manifested by prison doctors in their response to the prisoner's needs." *Estelle*, 429 U.S. at 104. It clearly follows that prisoners have a right not to have their doctors "consciously expos[e them] to an excessive risk of serious harm" while providing medical treatment.[6] *LeMarbe*, 266 F.3d at 439. As the district court put it, "a prisoner should not be recklessly endangered by his doctors' medical treatment when he is otherwise a healthy individual."

Viewing the evidence in the light most favorable to the estate, a reasonable factfinder could conclude that Thai knew about the serious risk to Quigley's life of taking both drugs at once and that Thai consciously disregarded this risk when he prescribed Trazodone without stopping Amitriptyline and then failed to closely monitor Quigley for possible fatal side effects. Obviously, if a doctor knows that his actions could kill a prisoner and takes those actions anyway without even advising of the risk, that amounts to more than a reasonable mistake in medical judgment. It is clearly established that

> [a]lthough a government doctor is entitled to qualified immunity if he has merely made a reasonable mistake in his medical judgment, he is not entitled to such immunity if he correctly perceived all the relevant facts, understood the consequences of such facts, and disregarded those consequences in his treatment of a patient.

*LeMarbe*, 266 F.3d. at 440. Because a reasonable factfinder could conclude that Thai consciously exposed Quigley to a substantial risk of death through his medical treatment without so much as a warning, the estate has shown that Thai violated a clearly established right.

That there is no federal case directly on point does not undermine this conclusion. The principle at issue—namely, that a doctor cannot "consciously expos[e

---

[6]The word *excessive* limits the reach of this principle in a crucial way. For example, if a patient is suffering from a medical condition that carries its own substantial risks, such as death, then risks associated with treating that condition would have to be comparatively larger to constitute *excessive* risks. In the present case, one can infer that there was no need to conduct treatment that carried a serious risk of killing Quigley because Quigley was otherwise healthy and there were readily available alternatives. For example, Thai simply could have ordered the prison to stop administering Amitriptyline while Quigley was using Trazodone since both drugs were prescribed to treat the same condition (depression).

a] patient to an excessive risk of serious harm" while providing medical treatment—is enshrined in our caselaw. *Id.* at 439. The estate has established that Thai violated a constitutional right and that the right was clearly established. Thai is therefore not entitled to qualified immunity.

## D.        Jurisdiction and merits of Thai's state-law immunity claim

We have jurisdiction to review Thai's appeal of the denial of state-law immunity on the estate's gross-negligence claim under Michigan law because Michigan Court Rule 7.202(6)(a)(v) provides that "'an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee' constitutes a 'final judgment' or 'final order.'"[7] *Bennett v. Krakowski*, 671 F.3d 553, 560 (6th Cir. 2011) (quoting Mich. Ct. R. 7.202(6)(a)(v)).

With respect to the estate's gross-negligence claims under Michigan law, Thai is entitled to immunity if, among other things, his "conduct does not amount to gross negligence that is the proximate cause of the injury or damage."[8] Mich. Comp. Laws § 691.1407(2)(c). For purposes of this state immunity statute, "'[g]ross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 7(a). Thai argues that he is entitled to state-law immunity because the estate cannot establish a question of material fact that Thai's conduct (1) constituted gross negligence under state law or (2) was the proximate cause of Quigley's death. We address each argument in turn. Because this appeal arises from the summary-judgment stage of the proceedings below, we consider the evidence in the light most favorable to the nonmoving party (the estate) and draw all reasonable inferences in that party's favor. *Liberty Lobby*, 477 U.S. at 255.

---

[7]The district court could have explicitly held in its second order denying summary judgment that it denied Thai state-law immunity on the estate's gross-negligence claim in addition to denying Thai qualified immunity on the estate's federal claims. But because the analysis of each immunity claim is substantially similar, and because both parties contend in their briefs that the district court denied Thai state-law immunity, we analyze the district court's order denying summary judgment as an order denying both qualified and state-law immunity.

[8]That Thai meets the other requirements for immunity under state law is not disputed. *See* Mich. Comp. Laws § 691.1407(2). We therefore restrict our analysis to the requirements at issue on appeal: gross negligence and proximate cause.

Showing that Thai was grossly negligent for purposes of state-law immunity is materially similar to showing that his conduct satisfies the subjective component of an Eighth Amendment claim. *Compare* Mich. Comp. Laws § 691.1407(7)(a), *with Farmer*, 511 U.S. 836 (holding that deliberate indifference requires that the "official knows of and disregards an excessive risk to inmate health or safety," which "is the equivalent of recklessly disregarding that risk"). So for the same reasons that the estate satisfies the subjective component of an Eighth Amendment claim, the estate also satisfies the requirement to show that Thai was grossly negligent. Viewing the evidence in the light most favorable to the estate, a reasonable factfinder could conclude that Thai's "conduct [was] so reckless as to demonstrate a substantial lack of concern for whether an injury result[ed]." Mich. Comp. Laws. § 691.1407(7)(a).

The estate has also presented evidence from which a reasonable factfinder could conclude that Thai's conduct was the proximate cause of Quigley's death. *Proximate cause* as used in the state immunity statute "means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.'" *Robinson v. City of Detroit*, 613 N.W.2d 307, 311 (Mich. 2000). Thai argues that his conduct was not the proximate cause because the evidence according to his experts and the autopsy establishes that Quigley died of an epileptic seizure, not a fatal drug interaction. But we must view the evidence in the light most favorable to the estate. A reasonable factfinder could conclude based on the evidence provided by the estate's medical experts that Quigley died as a direct result of taking the two drugs together. Such a factfinder could further conclude that Thai's conduct of prescribing Trazodone when he knew Quigley was already taking Amitriptyline was the most immediate, efficient, and direct cause of Quigley's death.

Because there are disputes of material fact on whether Thai's conduct constituted gross negligence and was the proximate cause of Quigley's death, Thai is not entitled to immunity from the estate's gross-negligence claim under Michigan Law. The district court therefore properly denied Thai summary judgment on this claim.

## III. CONCLUSION

For the above reasons, we AFFIRM the judgment of the district court.