DAMON J. KEITH, Circuit Judge,
dissenting.
Because I disagree with the majority’s view that Ortega did not have a “clearly established” liberty interest in home confinement, I respectfully dissent.
I address Ortega’s claims against the Louisville Metro Department of Corrections (“Metro Defendants”) and Immigration agent John Cloyd (“Cloyd”) separately-

Metro Defendants

The facts of this case are such that the unlawfulness of Metro Defendants’ conduct is readily apparent, even in the absence of *442 clarifying case law. Metro Defendants seized Ortega, an American-born, United States citizen, from his home and took him to jail for four days, based upon an improper detainer, without a warrant or any semblance of process. In doing so, Metro Defendants did not allow him to produce any documentation that he was an American citizen. As this Court has recently explained:
“[Ojutrageous conduct will obviously be unconstitutional” without regard to precedent because “the easiest cases don’t even arise.” Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364,. 377, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009) (brackets and internal quotation marks omitted). And even in eases involving less than outrageous conduct, “officials can still be on notice that their conduct violates established law in novel factual circumstances.” Id. at 377-78, 129 S.Ct. 2633 (ellipses and internal quotation marks omitted).
Quigley v. Tuong Vinh Thai, 707 F.3d 675, 684 (6th Cir.2013).
Not only should the officers have known that removing someone from their home and taking them to jail requires a certain minimum level of process, but in my view, the relevant case law clearly establishes that criminal defendants have a constitutional due process right to remain in home confinement.
Confinement in the home is inherently different from confinement in jail. The majority concedes this point, holding that the distinction between the two settings of confinement amounts to a “difference[ ] in kind, not degree.” Indeed, the terms of Ortega’s plea agreement provided that Ortega would serve his sentence through Kentucky’s Home Incarceration Program, a creation of Kentucky law. Under the program, Ortega was allowed to eat foods of his choice, sleep in his own bed, report to work, and attend religious services each day. As the majority correctly points out, “[tjhese marked disparities between the liberty in the one setting as opposed to the other suffice to trigger due process.”
Nevertheless, the majority dismisses Ortega’s claims based on the second prong of the qualified immunity test, holding that “no controlling authority or consensus of persuasive authority established that Ortega had a liberty interest in remaining on home confinement.” This conclusion is untenable. Clearly established rights include not only those specifically adjudicated, but also those that are established by general applications of core constitutional principles. See, e.g., Quigley, 707 F.3d at 685 (6th Cir.2013) (“That there- is, no federal case directly on point does not undermine [the] conclusion [that] [t]he principle at issue — namely, that a doctor cannot ‘consciously expos[e a] patient to an excessive risk of serious harm’ while providing medical treatment — is enshrined in our case law.”).
Here, the core constitutional principle— that an officer must provide some process before seizing an individual from his home and taking him to jail — is unquestionably enshrined in our case law. Admittedly, the Supreme Court and this Court have only explained this principle in the probation and parole contexts. See, e.g., Young v. Harper, 520 U.S. 143, 147-53, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997); Sneed v. Donahue, 993 F.2d 1239, 1241 (6th Cir. 1993). Surely, however, the test for determining whether a constitutional right was clearly established does not require a plaintiff to demonstrate that “the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.” Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Indeed, in this case, the unlawful *443 ness of Metro Defendants’ actions clearly was apparent.
The majority’s cursory dismissal of analogous cases from the First and Seventh Circuits, see Gonzalez-Fuentes v. Molina, 607 F.3d 864 (1st Cir.2010); Domka v. Portage Cnty., 523 F.3d 776 (7th Cir.2008); and Paige v. Hudson, 341 F.3d 642 (7th Cir.2003), as “neither robust in their relevant analyses nor evidence of an on-point consensus” misses the point. At a minimum, those decisions firmly establish that an individual serving a sentence outside of prison is entitled to some minimum amount of process before being arrested and taken to jail. See also Kim v. Hurston, 182 F.3d 113, 118-20 (2d Cir.1999); Edwards v. Lockhart, 908 F.2d 299, 302 (8th Cir.1990).[1]
The majority’s holding allows an officer to blatantly violate the Fourth, Fifth, and Fourteenth Amendment rights of an American citizen — so long as it was done in a manner that neither this Court nor the Supreme Court has directly opined on before — with impunity. This cannot be the intent of the qualified immunity doctrine.

ICE Defendant Cloyd

Although the majority fails to distinguish between Ortega’s claims against Metro Defendants and ICE Agent Cloyd, the facts of this case call for a separate analysis as to each Defendant’s liability.
It is undisputed that Cloyd improperly issued a detainer against Ortega. It is also undisputed that Cloyd’s actions were a proximate and but-for cause of Ortega’s removal from home confinement and subsequent incarceration. Having established that Ortega had a clearly established liberty interest in remaining in home confinement, Cloyd may be liable for violating Ortega’s rights. See Powers v. Hamilton Cnty. Public Defender Com’n, 501 F.3d 592, 608 (6th Cir.2007). Accordingly, I believe the district court’s dismissal of Ortega’s claims against Cloyd was improper.
A complaint may only be dismissed “if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings.” Jackson v. Schultz, 429 F.3d 586, 589 (6th Cir.2005). In reviewing a motion to dismiss, we “construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.” Bassett v. Nat’l Collegiate Athletic Ass’n, 528 F.3d 426, 430 (6th Cir.2008).
Ortega alleges that Cloyd improperly issued an immigration detainer against him, despite the fact that he was an American-born United States citizen. Cloyd argues that this erroneous issuance of the detainer was due to the fact that Ortega had a similar, but not identical name and birth date as an individual who had previously been deported. The district court referred to this as “an unfortunate but honest mistake.” R. 48 at 343. But the district court could not possibly have assessed the reasonableness of Cloyd’s error because the detainer was not part of the record at the motion to dismiss stage. There is simply no way to know how similar the names and birth dates of the two *444 individuals were without analyzing the de-tainer itself.
Moreover, even taking Cloyd’s argument on its face, it is unclear what relationship — beyond a shared ethnic background — Ortega had with an individual who had already been removed from the country. To allow ICE to issue a detainer against an American citizen, with unlimited discretion and without any accountability, sets a dangerous precedent and offends any and all notions of due process. Because a reasonable factfinder could conclude, after carefully evaluating the detain-er, that Cloyd intentionally and improperly issued the detainer against Ortega, I believe dismissal was improper.
For the foregoing reasons, I do not agree that the claims against either of the defendants should have been dismissed. I dissent.

. We note further that in 2011, the Eastern District of Pennsylvania evaluated the above-cited cases and decided the precise question in this case in the affirmative, holding that "the Fourteenth Amendment demands some minimal process before a state actor takes someone who is set to serve his sentence at home, on electronic monitoring, and instead puts him in prison or another form of ‘institutional confinement.' ” McBride v. Cahoone, 820 F.Supp.2d 623, 631 (E.D.Pa.2011).