**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0896n.06

No. 12-2393

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LARRY D. LEE, JR., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEAN WILLEY; T. ZISCHKE; BAGLEY; | ) | ON APPEAL FROM THE UNITED |
| OWEN, Correctional Officers; D. THOMAS, | ) | STATES DISTRICT COURT FOR |
| MDOC, Sergeant; NICK LUDWICK, Warden; | ) | THE EASTERN DISTRICT OF |
| HAYDEN, Correctional Officer; WADE | ) | MICHIGAN |
| DIXON, Psychiatrist; PAUL SCHNEEMAN, | ) | |
| Psychologist; WILLS DIXON; R. WILLIAMS; | ) | |
| JOHN DOE; JANE DOE, | ) | OPINION |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KAMESHWARI MEHRA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BOGGS and DONALD, Circuit Judges; STAMP, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge.** When an individual working for a state

government is sued in a personal capacity pursuant to 42 U.S.C. § 1983, we typically engage in a

two-part analysis to determine whether that person is entitled to qualified immunity. The

inquiry—one that is quite familiar to us—asks whether a plaintiff's factual allegations demonstrate

---

[*] The Honorable Frederick P. Stamp, Jr., United States District Judge for the Northern District of
West Virginia, sitting by designation.

a constitutional violation and whether the constitutional right at issue was "clearly established" at the time of the incident. If the answer to either question is no, then the employee is entitled to immunity and the suit is dismissed at the summary judgment stage.

When the party raising qualified immunity as a defense works for the state as a private contractor, as is the case here, we must first engage in an antecedent inquiry concerning whether the defendant may properly invoke the defense qualified immunity.

In this case, the district court gave us no answer to this question. We conclude that it was improper for the district court to gloss over the threshold question of assertability, and we answer that question in the plaintiff's favor. For this reason, we **AFFIRM** the district court's decision, finding that the defendant was not entitled to the defense of qualified immunity as a basis for his motion to dismiss.

Kameshwari Mehra worked as a psychiatrist at the Michigan Department of Corrections' (MDOC) where he was assigned to the Reception and Guidance Center (RGC) in Jackson, Michigan. He was formerly a state employee, but he began working on a contract basis in 2003. Mehra was employed through what he called a "long-term company"—the Jackson and Coker Recruiting Agency. During his time at the RGC, he also served as an in-house consultant at the local veterans hospital.

In March 2007, prison officials brought Larry D. Lee, Jr. to the Jackson facility for inmate intake and processing. At the outset, prison officials subjected Lee to abusive verbal harassment on the basis of his sexual orientation.

As part of the intake process, MDOC medical personnel evaluated Lee's health, concluding that he needed treatment for depression and hypertension. Paul Schneeman, a social worker at the RGC, saw Lee for a mental health evaluation. After meeting with Schneeman, Lee saw Wills Dixon, a prison psychologist. Dixon completed a mental health assessment and referred Lee to Mehra.

Lee and Mehra met for the first time on April 6, 2007. During this encounter, Lee expressed "fears and phobias about being harassed by other prisoner[s]" and staff inside the prison. Mehra observed that Lee "appear[ed] to be over[ly] concern[ed] about his safety in the prison system, because of his sexual orientation." Concerned about the potential for sexual assault, Lee asked Mehra to place him in protective custody. The psychiatrist took no action. Mehra had the authority to order Lee to be placed in secured housing, but Mehra believed he did not have the custodial authority to do what Lee asked.

Three days later, two unidentified inmates raped Lee at knifepoint. Lee attempted to file a formal grievance, but prison officials denied him access to a grievance form. On April 13, 2007—four days after the assault—Lee filed grievances against several prison officials for their homophobic remarks. The grievances did not mention the forced sexual encounter.

That same day, Lee met with Mehra and told him:, "I can't take it anymore. I am stressed out. Everyone is talking about my sexual orientation and making all kinds of bad remarks. I can't take it anymore. I need help." Mehra noted that "[Lee] feels the prisoners are advancing towards him for sex. He continues to fear about these things all the time to the level of sometimes [sic] to paranoia." Concluding that Lee suffered from post-traumatic stress disorder, Mehra prescribed 200 milligrams of Atrax and two milligrams of Risperdal. The two saw each other on at least one other

occasion, but there is no record or testimony as to what happened during this encounter, save for an adjustment of medication. MDOC transferred Lee to a permanent corrections facility on May 9, 2007.

Proceeding *pro se* (but later retaining counsel), Lee filed a complaint in the United States District Court for the Eastern District of Michigan, claiming that the defendants—Mehra and other prison employees and officials—were liable under: (1) 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments; (2) the Elliot-Larsen Civil Rights Act; and (3) state common law for intentional infliction of emotional distress. Mehra moved for summary judgment, arguing that Lee failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act. The magistrate judge recommended denial of the motion, and the district court agreed.

Mehra tried again, this time moving for summary judgment, contesting the merits of Lee's claims. The magistrate judge recommended that summary judgment be granted in favor of Mehra on all of Lee's claims, except for the deliberate-indifference claim arising from the psychiatrist's alleged failure to protect his patient-prisoner. With respect to that issue, the magistrate judge concluded that there was a clearly established right for prisoners to be free from prisoner-on-prisoner violence, and that there was a genuine issue of material fact as to whether Lee's Eighth Amendment rights had been violated. The report reasoned that Mehra's failure to either place Lee in protective custody or ask custodial officials to grant Lee's request for such custody could serve as the factual basis for a jury to find a constitutional violation. Hence, the report concluded, Mehra was not entitled to qualified immunity on Lee's Eighth Amendment claim. The district court agreed.

Mehra then filed this interlocutory appeal, challenging the district court's denial of his qualified immunity defense with respect to Lee's Eighth Amendment claim.

We review *de novo* a district court's decision to deny summary judgment on qualified-immunity grounds. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011). Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The evidence must be construed in the light most favorable to the nonmoving party, with all inferences drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Both parties have raised a number of jurisdictional issues. We decline to address their arguments at length, except to say that this Court has jurisdiction to decide whether Mehra was eligible to invoke the defense of qualified immunity. *See Quigley v. Thai*, 707 F.3d 675, 680 (6th Cir. 2013); *see also McCullum v. Tepe*, 693 F.3d 696, 699-700 (6th Cir. 2012); *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008).

When a private employee working at a state prison is sued under § 1983, we must first determine whether that employee "can invoke qualified immunity in a lawsuit arising out of his activities at the prison." *McCullum*, 693 F.3d at 700. To do so, we ask two questions: (1) whether "there was a firmly rooted history of immunity for similarly situated parties at common law"; and (2) "whether granting immunity would be consistent with the history and purpose of § 1983." *Id.*

In this instance, however, we need not strain ourselves to discern the answer, for it was already decided in *McCullum v. Tepe*, 693 F.3d 696 (6th Cir. 2012) that a psychiatrist "employed by an independent non-profit organization, but working part-time for the County as a prison

psychiatrist" was not entitled to the defense of qualified immunity. *Id.* at 699-700, 704. We found no nineteenth-century common law contemporary to § 1983's passage that granted immunity for private doctors working at public institutions. *See id.* at 704. We also concluded that the policy considerations undergirding § 1983 immunity militated against granting immunity, where, as here, the defendant's primary employer, a private firm, is capable of "offset[ing] . . . [the] increased . . . liability risk" resulting from its employees' lack of § 1983 immunity. *Id.* at 704.

There is little doubt that *McCullum* applies here. As Mehra's counsel conceded at oral argument, there is no meaningful distinction between him and the psychiatrist in *McCullum.* Acknowledging this reality, Mehra instead opts to attack the wisdom of our prior decision, contending that *McCullum* was wrongly decided. He cites four reasons in support of his argument: (1) the decision disregarded the Supreme Court's recognition of common-law immunity for private doctors in *Richardson v. McKnight*, 521 U.S. 399 (1997); (2) the *McCullum* court erroneously assumed that the silence of nineteenth-century caselaw on common-law immunity for private doctors meant that no such immunity existed; (3) the role of private physicians is not distinguishable from other protected functions identified by the Supreme Court in *Filarsky v. Delia*, 132 S. Ct. 1657 (2012); and (4) the policy analysis used by the *McCullum* court applied only to private prisons and employees thereof.

From the outset, we note that a three-judge panel of this court is not the proper audience for such contentions. *McCullum* is a published decision of this circuit, and whatever the wisdom of Mehra's arguments may be, we must treat it as binding authority. *See United States v. Humphrey*, 287 F.3d 422, 452 (6th Cir. 2002) ("It is axiomatic that a court of appeals must follow the precedent

of prior panels within its own circuit."); *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) ("[O]nly the court sitting *en banc* may overrule a prior decision of a panel.").

But *stare decisis* is not the only reason we reject Mehra's arguments—they are, in a word, wrong. We address each of them in turn.

*First*, the *McCullum* court *did* address *Richardson*, noting its "cryptic comment" about the possibility of private doctors being entitled to qualified immunity. It observed that the *Richardson* Court's dicta had no support in the law. *McCullum*, 693 F.3d at 702-04. Neither the common law contemporary to § 1983s passage nor the common law of the twentieth century supported the idea that there was a firmly rooted common-law practice of extending immunity to private psychiatrists. *Id.* at 701-04.

Even if we were to ascribe some meaning to *Richardson*'s "cryptic comment," however, it would—at most—immunize doctors from liability for negligent acts. *See Harrison*, 539 F.3d at 522. As an Eighth Amendment claim of deliberate indifference necessarily requires something more than "mere mistreatment or negligence," *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013) (internal quotation marks omitted), *Richardson*'s "cryptic comment" does nothing for Mehra here.

*Second*, Mehra seems to suggest that this court improperly constrained itself by analyzing *only* nineteenth-century caselaw in concluding that there was no common-law immunity for private doctors serving the government. But nothing in twentieth-century caselaw helps his case, either. *See McCullum*, 693 F.3d at 701 (citing *Jensen v. Lane Cnty.*, 222 F.3d 570, 577 (9th Cir. 2000); *Hinson v. Edmond*, 192 F.3d 1342, 1347 (11th Cir. 1999)); *see also Jensen v. Leonard*, 186 P.2d 206

7

(Cal. Dist. Ct. App. 1947) (considering an appeal arising from a suit against a privately employed psychiatrist working for the state as a medical examiner and refraining from any discussion of immunity). Moreover, we limited ourselves to nineteenth-century cases because the *Filarsky* Court suggested that we do so. *McCullum*, 693 F.3d at 702 (citing *Filarsky*, 132 S. Ct. at 1662).

*Third*, we need not distinguish private physicians from "other protected functions identified by the Supreme Court," as the Court has itself eschewed such a functional comparison. In *Filarsky*, the Court acknowledged that "examples of individuals receiving immunity for actions taken while engaged in public service on a temporary or occasional basis are as varied as the reach of government itself." 132 S. Ct. at 1665. Instead of comparing occupations side-by-side, the Court limited its analysis to the question of whether caselaw establishing immunity for a particular occupation existed at the time § 1983 was enacted. *Id.*

*Finally*, Mehra's contention that "the Supreme Court's analysis of the policy rationales in *Richardson* apply *only* to denying qualified immunity to a private prison and its personnel" is incorrect. Indeed, the *Filarsky* decision belies this observation; the case had nothing to do with prisons, yet the Court still looked to *Richardson*'s policy rationales to conclude that an investigator hired by a municipality was eligible to invoke the defense of qualified immunity. *Id.* at 1665-66.

With no good reason to disturb our holding in *McCullum*, we conclude that there is no meaningful distinction between the psychiatrist in that case and Mehra; thus, we conclude that, under *McCullum*, Mehra is not eligible to invoke the defense of qualified immunity. Without such a defense, it would have been improper for the district court to grant summary judgment in Mehra's

favor.  Hence, as the district court's denial of summary judgment was proper, we **AFFIRM** the

district court's decision.